**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| PATRICK PRANGLEY, | * | |
| Appellant, | * | United States District Court<br>Case No. PWG-13-3077 |
| v. | * | |
| MONICA FERRARI COKINOS, | * | United States Bankruptcy Court<br>Case No. 12-27809 |
| Appellee. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Appellant–Creditor Patrick Prangley ("Prangley") raises four challenges to the bankruptcy court's decision to strip two judicial liens encumbering the residential property of Appellee–Debtor Monica Ferrari Cokinos ("Cokinos") in their entirety pursuant to 11 U.S.C. § 522(f). The effect of avoiding his lien deprives Prangley of post-petition recourse against Cokinos's property and converts his secured claim into an unsecured claim. The bankruptcy court found the parties' experts equally credible and valued Cokinos's property at the midpoint between their appraisals, even though Cokinos's appraisal did not express an opinion as to the property's value on the date of the petition, September 28, 2012 (the "Petition Date"). In the absence of evidence to show that the expert's valuation, which expresses an opinion as to the property's value sixteen days later, also fairly values the property as of the Petition Date, it is not relevant for the purposes of determining value on the Petition Date. Additionally, I find that the

bankruptcy court incorrectly allowed the avoidance of the liens in their entirety. I therefore vacate the relevant orders and remand the case with instructions for further proceedings.[1]

## I. BACKGROUND

Cokinos filed a voluntary petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code on September 28, 2012. Docket, *In re Cokinos*, No. 12-27809 (Bankr. D. Md.). She lived at 2279 Dunster Lane, Rockville, MD 20854 (the "Property), *see* Feb. 21, 2013 Hr'g Tr. 50–51 ("Tr."), Appellant's Br. App. R6, ECF No. 5-6, and took out two mortgages on the Property from parties not relevant to this appeal, both secured by a single Deed of Trust. Subsequently, the Circuit Court of Maryland for Montgomery County entered two judicial liens encumbering the Property, one to CitiBank and one to Prangley, for reasons not clear from the record. *See* Sched. D, ECF No. 1-2. Cokinos moved to avoid both liens, ECF No. 1-10 (the "CitiBank Motion") & ECF No. 1-4 (the "Prangley Motion"). The CitiBank Motion was unopposed, but Prangley filed a timely opposition, ECF No. 1-17. The two motions were consolidated for hearing. At the outset of the hearing, the parties stipulated that the exemptions and liens on the Property totaled $589,706.04, and stipulated to certain evidentiary matters discussed below. Tr. 4–5. During the hearing, the bankruptcy court heard testimony from Cokinos's expert, Paul D'Anna, and Prangley's expert, Jennifer Horn, each of whom prepared appraisals of the Property.

### A. Summary of the Legal Issues Presented

Section 522(a)(2) of the Bankruptcy Code requires the bankruptcy court to determine the Property's value using the fair market value as of the Petition Date. *See* 11 U.S.C. § 522(a)(2).

---

[1] The remaining issues raised on appeal do not establish reversible error and will be AFFIRMED. Having reviewed the parties' briefs (ECF Nos. 5, 8, 9, 11 & 12) and the record below, I find oral argument unnecessary. *See* Fed. R. Bankr. P. 8012; Loc. R. 105.6.

2

While nothing in the Bankruptcy Code restricts the bankruptcy court from determining what evidence is relevant for this purpose, whatever evidence is admitted must establish the Property's value *as of* the Petition Date. Where this critical nexus is missing, the evidence is insufficient. *Cf. Reconco v. Partners for Payment Relief De III, LLC (In re Reconco)*, No. 13-10564-RGM, 2014 WL 1295721, at *3 (Bankr. E.D. Va. Mar. 31, 2014) (noting that the record did not support an inference that value assigned on the appraiser's valuation date should be related back to the petition date). The Horn Appraisal, though signed on December 9, 2012, used a valuation date[2] of September 28, 2012—the same as the Petition Date. Horn Appraisal 5, Appellant's Br. App. R13, ECF No. 5-13. The D'Anna Appraisal, signed on October 16, 2012, used a valuation date of October 14, 2012—sixteen days after the Petition Date—and was based on an evaluation of comparable properties that were sold *after* the Petition Date. D'Anna Appraisal 4, Appellant's Br. App. R8, ECF No. 5-8.

Once the bankruptcy court has determined the Property's value as of the Petition Date, it calculates the extent of avoidance under § 522(f)(2)(A). This is done by subtracting from the Property's value any exemptions and consensual liens (usually mortgages), leaving the remainder "for the partial satisfaction of [the] judicial lien[s]." *E. Cambridge Savs. Bank v. Silveira (In re Silveira)*, 141 F.3d 34, 36 (1st Cir. 1998).[3] Even though the remainder might be *de minimis*, it nevertheless may be significant because any remainder would allow a creditor, such as Prangley, to retain a secured claim against Cokinos and also may allow for post-petition recourse against the Property. *See* 11 U.S.C. §§ 522(c), 524.

---

[2] The "valuation date" refers to the date used by the appraiser to determine the property's value, which may or may not coincide with the petition date. For example, the D'Anna Appraisal's valuation date of October 14, 2012 means that his expert opinion was of the Property's value on October 14, 2012.

[3] Prangley incorrectly characterized *Silveira* as a Fourth Circuit decision. Appellant's Br. 12.

3

### B. Competing Testimony

At the hearing, Cokinos called Paul D'Anna, an experienced residential appraiser but first-time expert witness. Tr. 9. D'Anna appraised the Property at $545,000 as of October 14, 2012, sixteen days after the Petition Date. D'Anna Appraisal 4. Prangley called Jennifer Horn, who has been an appraiser since 2001 and, like D'Anna, never previously testified as an expert witness. Tr. 59. Horn's appraisal valued the Property at $625,000 as of the Petition Date. Horn Appraisal 5. Both looked to the size, location, and condition of the Property in determining its value. However, D'Anna, who based his appraisal on an evaluation of comparable properties that were sold *after* the Petition Date, disagreed with the values of the comparable properties used by Horn because reports by the Metropolitan Regional Information Systems, Inc. ("MRIS") demonstrated sharp declines in those values based on more recent (post-petition) sales. Tr. 28–31. In response, Horn testified that her valuations were preferable to D'Anna's because hers related back to the Petition Date. *Id.* at 75, 82–84, 110–11.

Each time they were referenced, Prangley objected to the MRIS reports because the sales dates therein postdated the Petition Date. *Id.* at 31–32. The bankruptcy court overruled the objections, holding that the MRIS reports were not admitted to determine value, but rather to establish the basis for D'Anna's appraisal. *Id.* at 32–33.

### C. Bankruptcy Court's Findings

The bankruptcy court, after weighing the evidence and finding the experts equally credible, assigned the Property a value of $585,000—splitting the difference between the two appraisals.[4] Tr. 122–25. On that basis, the court found that both liens were avoidable in their

---

[4] Prangley correctly notes a disparity between the valuation made on the record, $585,000, Tr. 125, and that written into the bankruptcy court's order, $485,000, ECF No. 1-41. Appellant's Br.

4

entirety even though the value that the court assigned to the Property exceeded its exemptions and consensual liens. Put another way, the Property no longer is encumbered by the two judicial liens, and Prangley's and CitiBank's claims, previously secured, became unsecured. *Id.* at 125. After the hearing, the bankruptcy court entered two orders, one granting the CitiBank Motion by default, ECF No. 1-40, and the second granting the motion to avoid Prangley's lien over his objection, ECF No. 1-41. Prangley seeks review of those orders as well as several rulings made by the bankruptcy court during the February 21, 2013 hearing.

The issues presented for review are:

1. Did the bankruptcy court err when it determined the Property's value as of the Petition Date based, in part, on an appraisal with a different valuation date?

2. Did the bankruptcy court err in assigning equal weight to the competing expert opinions, considering that the D'Anna Appraisal contained mathematical and linguistic errors, and considering his method of valuing comparable properties?

3. Did the bankruptcy court err in avoiding the two judicial liens in their entirety, rather than avoiding only the portion of the liens that did, in fact, impair Cokinos's exemptions?

4. Did the bankruptcy court abuse its discretion when it consolidated for hearing the unopposed CitiBank Motion with the opposed Prangley Motion?

*See* Appellant's Br. 1.

## II. STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court sits as an appellate court and reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992); *Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 499 (4th Cir. 1992). Mixed questions of law and fact also are reviewed *de novo*. *Litton v. Wachovia Bank (In re*

---

3 n.1. Considering the court's apparent intention to value the Property at the midpoint between the two appraisals, $585,000 appears to be the intended valuation. Still, I am confident the bankruptcy court will correct this typographical error on remand.

5

*Litton)*, 330 F.3d 636, 642 (4th Cir. 2003) (citing *Carter Enters. v. Ashland Specialty Co.*, 257 B.R. 797, 800 (S.D.W. Va. 2001)). For findings of fact, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Under the clearly erroneous standard, a reviewing court will not reverse "simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *Citizens Bank of Md. v. Broyles (In re Broyles)*, 55 F.3d 980, 983 (4th Cir. 1995). A finding of fact is clearly erroneous only when the reviewing court "is left with a definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

### III.  DISCUSSION

#### A.  Dismissal of the Appeal

First, Cokinos argues that I should not consider the merits of the valuation date discrepancy (the first issue listed above) because Prangley failed to list it in his designation of appeal. Appellee's Br. 16–17. For the reasons explained in the Order signed on March 20, 2014, ECF No. 10, this question is properly before the Court. Despite Cokinos's citations to non-binding authority to the contrary, it is clear in this District that the designation is not jurisdictional, but only enables the Clerk to assemble an adequate record. *See Videsh Sanchar Nigam Ltd. v. Startec Global Commc'ns Corp. (In re Startec Global Commc'ns Corp.)*, 300 B.R. 244, 249 (D. Md. 2003) (quoting *Office of the U.S. Trustee v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 104 F.3d 1147, 1148 (9th Cir. 1997)). In the March 20, 2014 Order, I permitted Cokinos to supplement the record. Cokinos did not do so, suggesting

6

that the record designated by Prangley was adequate to consider the question. As a matter of good practice, Prangley should have amended his designation prior to filing his brief. *See* Designation 2, ECF No. 1-1 ("Appellant . . . reserves the right to amend the statement of the issues to be presented prior to the Appellant's brief being filed."). Still, his designation implied a challenge to the rulings made regarding the competing appraisals and Cokinos was afforded an opportunity to supplement the record and to further respond to Prangley's arguments.

Second, Cokinos urges me to dismiss this appeal because Prangley's statement of facts contains only one direct citation to the record below. Appellee's Br. 16–18. However, the background section of Prangley's Brief, which includes more than his statement of facts, contains sufficient substance and citation to the record below to satisfy Fed. R. Bankr. P. 8010(a)(1)(D)'s requirement of a "statement of the facts relevant to the issues presented for review, with appropriate references to the record." And, although the citations are far from ideal, they are sufficient to guide both Cokinos and the Court to the necessary parts of the record. This Circuit long has been committed to the principle that "'substance will not give way to form,'" and that "'technical considerations will not prevent substantial justice from being done.'" *Brockington v. Scott (In re Physicians & Dentists Inv. Corp.)*, 381 F.2d 792, 794 (4th Cir. 1967) (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)); *see Ghannam v. Standish (In re Protan)*, No. 11-0057, 2011 WL 4597343, at *20 n.5 (S.D.W. Va. Sept. 30, 2011) (proceeding to the merits of a bankruptcy appeal even where the parties designated "several thousands of pages" without any specific citations). Although more complete citations would have been preferable, dismissal for lack of citations is not warranted, at least "[i]n the absence of evidence of prejudice or obstinately dilatory conduct," which has not been shown. *Zer-Ilan v. Frankford (In re CPDC Inc.)*, 221 F.3d 693, 701 (5th Cir. 2000).

### B. Effective Date of the Competing Appraisals

Prangley argues that the bankruptcy court erred in giving the D'Anna Appraisal any weight at all because it used a valuation date different from the Petition Date. But the review of the valuation depends upon the evidentiary stipulation, as explained below.

#### 1. *Federal Rule of Evidence 401 Applied to Valuations of Property*

Relevance is a two-step determination. *See* Fed. R. Evid. 401; *see also* Fed. R. Bankr. P. 9017 ("The Federal Rules of Evidence . . . apply in cases under the [Bankruptcy] Code."); Fed. R. Evid. 1101(a)–(b). Fed. R. Evid. 401(a) looks to whether the evidence "has any tendency to make a fact more or less probable." The D'Anna Appraisal certainly has some tendency to make it more probable that the Property's fair market value *on October 14, 2012* was $545,000. Next, however, Fed. R. Evid. 401(b) requires a showing that the Property's value on October 14, 2012 "is of consequence in determining" the value on the Petition Date. *See* 11 U.S.C. § 522(a)(2).

Absent additional facts to provide a logical nexus, the value of the Property on October 14, 2012 does not help to establish the value of the Property on September 28, 2012. *See In re Sarno*, 463 B.R. 163, 167 (Bankr. D. Mass. 2011). There are many ways that the nexus could have been provided at the hearing. It might have consisted of evidence that real property value is unlikely to change between two dates that are only sixteen days apart. But this evidence is nowhere apparent from the record below. Not only did Cokinos fail to provide the nexus, but Prangley's expert also disputed the possibility that the value remained static for that sixteen-day period by testifying that market fluctuations produce quick changes in the real estate market. *See* Tr. 74–75. Absent this factual nexus, the Horn Appraisal provides the only expert evidence of the Property's value on the Petition Date.

Cokinos relies on both *In re Bonuccelli*, No. 03-31729PM, 2010 WL 2640383, at *1 (Bankr. D. Md. June 25, 2010), and *Fitzgerald v. Davis (In re Fitzgerald)*, 729 F.2d 306, 307 (4th Cir. 1984), to argue that the bankruptcy court properly considered the D'Anna Appraisal. However, those cases are not relevant because each appraisal referenced therein revised its valuation based on the eventual sale price of the *property at issue*. *In re Fitzgerald* held only that the post-petition sale of the subject property may be relevant to, although not dispositive of, its value on the Petition Date. 729 F.2d at 308. *Bonuccelli* cites to *In re Fitzgerald* for the same holding—that when a bankruptcy estate's asset is sold during the bankruptcy case, *that asset's* actual sale price can be considered in its valuation. 2010 WL 2640383, at *1 (citing *In re Fitzgerald*, 729 F.2d at 306). Neither decision stands for the proposition that appraisals of value on other dates besides the petition date are sufficient, standing alone, to establish a property's value on the petition date.

Admitting the D'Anna Appraisal without the missing nexus demonstrating that its valuation would have been accurate as of the Petition Date would be an abuse of discretion, because without it the appraisal was insufficient to determine the value of the Property as of the Petition Date. *See United States v. Williams*, 445 F.3d 724, 732 (4th Cir. 2006) (abuse of discretion means "the trial court acted arbitrarily or irrationally in admitting evidence").

    2. *Evidentiary Stipulations*

As noted above, on the date of the hearing before the bankruptcy court, the parties entered into an evidentiary stipulation before testimony began. The stipulation was as follows:

> [Prangley's counsel]: I had filed an objection to those exhibits as to [the D'Anna Appraisal] which I am going to withdraw at this time. That is Mr. D'Anna's full appraisal.
>
> The Court: Okay.

Tr. 6.

9

The bankruptcy court should determine on remand the scope of this stipulation: Did Prangley stipulate only to the admissibility of the D'Anna Appraisal for purposes of establishing the Property's value as of October 14, 2012, or did he stipulate that it was admissible to establish its value as of the Petition Date? The current record is unclear. If the former, the bankruptcy court should make a finding as to whether there is a nexus between D'Anna's valuation date and the Property's value on the Petition Date, particularly in light of the testimony of both experts that property values can fluctuate within a very short amount of time. If the latter, the bankruptcy court should fully describe the reasons for the weight given to the D'Anna Appraisal in relation to the Horn Appraisal in determining the Property's value as of the Petition Date.

### C. Appraisal Errors and Supporting Evidence

The next issue presented for review is whether the bankruptcy court abused its discretion in crediting the valuations of D'Anna and Horn equally in light of (1) mathematical and linguistic errors in the D'Anna Appraisal and (2) D'Anna's assertedly improper method of selecting comparable properties. Preliminarily, it should be noted that despite having prior access to both the D'Anna Appraisal and the comparable properties considered in its preparation, Prangley stipulated to D'Anna's expertise, Tr. 5, and did not object to his appraisal under Fed. R. Evid. 702(c) or 702(d). Therefore, any Fed. R. Evid. 702(c)–(d) objections are waived. *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 574 (D. Md. 2010) (holding that objections not properly raised are waived).

Absent those objections, the only remaining challenge could be to the determinations of credibility and weight of the evidence as assigned by the bankruptcy court. But those determinations particularly are within the province of the finder of fact. *See United States v. Leigh*, No. 95-5194, 1996 WL 95968, at *4 (4th Cir. Mar. 6, 1996) (citing *United States v.*

*Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984)). The bankruptcy judge was in the best position to weigh the competing appraisals, including any shortcomings within, in light of the totality of the evidence before her. Tr. 122–25. I find no clear error in this portion of her factual findings. However, inasmuch as I am remanding this case for further proceedings regarding the valuation, the bankruptcy court should explain clearly the purpose for which any challenged comparables are admitted, particularly in light of Fed. R. Evid. 703's requirement that inadmissible but reliable evidence may not be admitted for purposes of evaluating the basis of an expert's opinion unless the court determines that probative value in evaluating the expert's opinion substantially outweighs any prejudicial effect.

**D. Avoidance of the Liens in their Entirety**

Next, Prangley argues that the bankruptcy court erred as a matter of law in stripping the judicial liens in their entirety, rather than only avoiding them to the extent they impair the Debtor's exemptions. The question of whether a lien is avoidable under 11 U.S.C. § 522(f) is reviewed *de novo*. *See In re Johnson*, 960 F.2d at 399; *see also Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 246 (4th Cir. 2009) ("'[b]y definition, *de novo* review entails consideration of an issue as if it had not been decided previously.'" (quoting *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992))).

In calculating the extent of avoidance under § 522(f)(2)(A), the bankruptcy court adds the exemptions permitted on the subject property, any consensual liens encumbering the property (usually mortgages), and any other liens encumbering the property (judicial liens in this case). If that sum is more than the value assigned under § 522(a)(2), the difference is removed from the encumbering judicial liens (i.e., the difference is "avoided"). *See Jones v. Nat'l Insts. of Health Fed. Credit Union (In re Jones)*, No. 03-16931-WIL, 2006 WL 4595783, at *4 (Bankr. D. Md.

Aug. 11, 2006) (citing *Canelos v. Mignini (In re Canelos)*, 216 B.R. 159, 165 (Bankr. D. Md. 1997); *In re Hemric*, 333 B.R. 81, 83 (Bankr. M.D.N.C. 2005)); *see also Wachovia Bank & Tr. Co. v. Opperman (In re Opperman)*, 943 F.2d 441, 444 (4th Cir. 1991) ("A lien larger in amount than the exemption available to the debtor does not impair that exemption. Thus, only that part of a lien which actually interferes with the debtor's homestead exemption may be avoided." (citations omitted)); *In re Silveira*, 141 F.3d at 36. This prevents the liens from reducing the homestead exemptions allowed by state law.

In cases with consensual liens (to which § 522(f)(1) does not apply), the easiest way to calculate the impairment is by starting with the value of the property and subtracting the exemptions and liens in order of seniority, as shown below. *See generally* David Gray Carlson, *Security Interests on Exempt Property After the 1994 Amendments to the Bankruptcy Code*, 4 Am. Bankr. Inst. L. Rev. 57, 66 (1996). The parties in this case appear to agree on the amounts of the Property's encumbrances. Appellee's Br. 19–20; Tr. 4. Accepting *arguendo* the bankruptcy court's valuation of $585,000, the first step is to subtract the exemptions, which the parties agree are $22,126. That leaves the Property with $562,874 in equity. Subtracting the two mortgages leaves $735.31 "for the partial satisfaction of [the] judicial lien[s]." *In re Silveira*, 141 F.3d at 38. Therefore, the decision to avoid the liens in their entirety despite the remaining equity in the Property was contrary to § 522(f).

On remand, after the bankruptcy court reconsiders the Property's value, it must recalculate the extent of impairment and determine in the first instance whether the remainder should be prioritized to Prangley's lien in light of § 522(f)(2)(B) ("In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens"). As noted above, even though

the remainder might be *de minimis*, it may allow Prangley to retain a secured claim against Cokinos and also may allow for post-petition recourse against the Property. *See* 11 U.S.C. §§ 522(c), 524.

### E. Consolidation for Hearing

Last, Prangley argues that the bankruptcy court abused its discretion in consolidating the CitiBank and Prangley Motions for hearing. He recognizes that "Fed. R. Bankr. P. 7042, applied to contested matters through Fed. R. Bankr. P. 9014, allows the bankruptcy court to consolidate actions involving a common question of law or fact . . . ." Appellant's Br. 13. Still, Prangley argues that CitiBank could have benefitted unduly from his efforts because the remaining equity under § 522(f), had the bankruptcy court calculated it correctly, might be applied to CitiBank's lien, which he argues should be removed from the calculations pursuant to § 522(f)(2)(B). *Id.* This argument is without merit.

Presiding judges have considerable discretion in managing their dockets. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666–67 (1978). In consolidating these motions for hearing, the bankruptcy judge properly exercised that discretion. *See Jalali v. Pierce Assocs., Inc.*, No. WDQ-11-1069, 2011 WL 3648284, at *3 (D. Md. Aug. 11, 2011). Like district judges presiding over bench trials, the bankruptcy judge is trusted with separating the discrete issues involved in making her decisions. In both contexts, "there is less concern that the finder of fact will utilize evidence for an improper purpose." *See United States v. Sebolt*, No. 13-4093, 2014 WL 522924, at *6 (4th Cir. Feb. 11, 2014) (citing cases). I find no abuse of discretion in the bankruptcy court's decision to consolidate the motions for hearing.

## IV.  CONCLUSION

For the reasons explained above, the bankruptcy court's orders avoiding the liens in their entirety will be VACATED by separate order.  The case will be REMANDED for further proceedings consistent with the instructions above.

Dated: <u>May 7, 2014</u>                                                   /S/
                                                                        Paul W. Grimm
                                                                        United States District Judge

jwr